UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL M. ANDREOLA, SR.,

      Plaintiff,

v.                                       Case No. 04-C-0186

STATE OF WISCONSIN,
ROCK COUNTY, and
ERIC M. RUNAAS,

      Defendants.

## MEMORANDUM AND ORDER

    Plaintiff Daniel M. Andreola, Sr., brought this action under 42 U.S.C. § 1983 against Defendants Rock County and Eric Runaas, claiming that the defendants violated his First Amendment right to freely exercise his religion by failing to provide him with a kosher diet during the approximately nine-month period he was confined in the Rock County Jail. In a Decision and Order entered on September 2, 2005, I granted the defendants' motion for summary judgment on Andreola's First Amendment claim, but withheld ruling on his claim that the County had also violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* Although Andreola had not asserted the RLUIPA claim in his original complaint and had been denied leave to file an amended complaint in which he sought to raise RLUIPA along with additional unrelated claims against previously unnamed parties, I nevertheless held that the facts alleged in the original complaint were sufficient to provide notice. I therefore concluded that under the liberal rules of notice pleading applicable in federal courts, *see Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729-30 (7th Cir. 2005), the claim was properly before me. Because the

defendants had not addressed the RLUIPA claim in their motion, however, I invited further briefing. Still uncertain of the extent of Andreola's claim even after the supplemental briefing, I requested oral argument. Now, having considered the entire record in this matter, including the arguments of the parties, I conclude that summary judgment should be granted on Andreola's RLUIPA claim, as well as his First Amendment claim, and order this action dismissed.

**I.**

The court has set forth the facts in its previous orders but will briefly recount them here as expanded on by Andreola during the hearing on January 11, 2006. On February 10, 2003, Andreola was arrested and booked into the Rock County Jail. (PFOF ¶ 1.) At that time, he advised Rock County Jail officials that he was an Orthodox Jew and that he required a kosher diet. (PFOF ¶ 6.) Andreola was the first Jewish inmate in Rock County to request a kosher diet. (PFOF ¶ 33.)

On February 11, 2003, Andreola met with Jeanne Lenox, the lead cook at the Rock County Jail, and Sgt. Candi Kildow, a Rock County Sheriff's deputy who is Jewish and keeps kosher when possible. (PFOF ¶¶ 5-8.) Kildow explained to Andreola that the jail kitchen and the foods prepared therein were not kosher. (PFOF ¶ 9.) Believing that he would be released on bail within a short period of time, Andreola provided Lenox with a list of foods he could have. (PFOF ¶ 10.) The kitchen and jail staff thereafter provided Andreola with foods from this list. (PFOF ¶ 12.) Andreola was not released from custody as he expected, however, and over time refused to eat the meals he was provided. He claimed that the meals were not kosher, and that he needed to supervise the

2

kitchen staff and prepare his own meals to ensure that they were kosher. (PFOF ¶ 12; Lenox Aff., Ex. 1.)

On February 25, 2003, Lenox and Commander Barbara Barrington decided that Andreola thenceforth would be given regular jail meals. (PFOF ¶ 13; Lenox Aff., Ex. 1.) When Andreola complained to the state court judge presiding over his case, the judge directed the jail to provide him a kosher diet and the jail resumed providing him selected items from its menu on June 11, 2003 (PFOF ¶ 36); however, on June 12, 2003, Andreola stated that he would not eat the meals provided because he did not consider them kosher. (PFOF ¶ 37.)

On September 1, 2003, Aramark Correctional Services, Inc., took over food preparation services for the Rock County Jail. (PFOF ¶ 16; Lidbury Aff., Ex. 1.) Andreola met with an Aramark representative, Lamont Moore, in early September to discuss Andreola's dietary needs. Andreola asked to be allowed to oversee preparation of his food in the jail kitchen. Aramark denied this request because of liability and security concerns. (PFOF ¶ 28.) Aramark did provide Andreola with "certified kosher" meals, at Rock County's expense. (PFOF ¶ 29.) Defendants contend Andreola later told Moore that he had no complaints about his "kosher" meals. (PFOF ¶¶ 30-31.) Andreola disputes this assertion, however, and claims he never received authentic kosher meals the entire time he was in the Rock County Jail. In any event, Andreola left the Rock County Jail on November 5, 2003, when he was transferred to the State of Wisconsin's correctional system. (PFOF ¶ 22.)

## II.

RLUIPA entitles a prisoner held in a county jail or state prison that receives federal funding to "appropriate" judicial relief from any governmental regulation or action that imposes a substantial

3

burden on his right to exercise his religion unless defendants prove that the burden: "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1, and 2000cc-2(a). Andreola argues that defendants should have permitted him to prepare his own meals. He claimed at oral argument that while serving an earlier sentence in Australia, he was allowed to enter the kitchen one day a week to prepare a week's worth of kosher meals for himself and other Jewish prisoners. Andreola claims he boiled water and specially cleaned the stove, sink, and utensils in such a way as to make them kosher. He then prepared his food, wrapped it in such a way that it remained kosher, and stored it in a freezer. Andreola claims that the defendants were required to permit him to do the same at the Rock County Jail. Alternatively, plaintiff argues that defendants could have ordered prepackaged kosher meals for him.

Defendants contend they were justified in refusing to allow Andreola to use the jail kitchen to prepare his own kosher meals by a compelling interest – the need to maintain order and security in the jail. The Rock County Jail had an over-capacity daily population of approximately five hundred inmates throughout the time Andreola was there. (DPFOF ¶ 32.) Defendants point out that working in the kitchen would put plaintiff in close proximity to knives and other dangerous weapons. (PFOF ¶ 28.) They also note that the perception that one prisoner is being treated more favorably than others can cause resentment and friction with other inmates. (PFOF ¶ 20.) Based upon these considerations, defendants contend their refusal to acquiesce in Andreola's demands did not violate RLUIPA.

There is no doubt that the need to maintain order and security is a compelling interest in running a prison. *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2124 n. 13 (2005) ("[P]rison security is a

4

compelling state interest."); *Procunier v. Martinez*, 416 U.S. 396, 412 (1974). It is no less compelling in the operation of a county jail. Jails involve a constantly shifting population made up of inmates who are serving relatively short sentences, probationers or parolees who are alleged to have violated the conditions of their supervision, and pretrial detainees like Andreola who are charged with a crime and awaiting trial. In Wisconsin, a person who has merely been charged with a criminal offense is eligible for release from jail "under reasonable conditions designed to insure his or her appearance in court, protect members of the community from serious bodily harm or prevent the intimidation of witnesses." Wis. Stat. § 969.01(1). Bail may be imposed "only upon a finding by the court that there is a reasonable basis to believe that bail is necessary to assure appearance in court." *Id.* Thus, it is reasonable to assume that a judge had concluded Andreola represented a risk of non-appearance if released on his own recognizance. Under these circumstances, and given the need to preserve order and security, it was not unreasonable for jail officials to refuse Andreola's request to essentially take over the jail kitchen to prepare his own meals. Congress "anticipated that courts would apply [RLUIPA's] standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline . . . .'" *Cutter*, 125 S. Ct. at 2123 (quoting S. Rep. No. 103-111, p. 10 (1993)). Defendants have provided an adequate explanation why prison security did not permit Andreola to prepare his own meals.

Nor did RLUIPA require defendants to provide Andreola with prepackaged kosher meals. Regular prisoner meals at the Rock County Jail cost $1.482 before Aramark took over food services and $0.896 after. (PFOF ¶¶ 17-18) Kosher meals cost between $3.86 and $11.99, and perhaps significantly more. (PFOF ¶ 19.) Providing Andreola with prepackaged kosher meals during his

5

nine-month stay in the Rock County Jail would thus have cost defendants $2,000 or more. Rock County officials have a compelling interest in controlling the costs to the taxpayers of operating the County's jail, especially expenditures on items that had not been previously budgeted. Defendants refusal to make this expenditure did not "impose a . . . burden," 42 U.S.C. § 2000cc-1(a), on Andreola's religious rights. *Cf. Cutter*, 125 S. Ct. at 2121 n.5 ("RLUIPA does not require a State to pay for an inmate's devotional accessories.").

This country and its courts have debated whether and under what circumstances the government is permitted to spend public money for purposes related to religion, even when such expenditures are made pursuant to a program open to secular recipients as well as religious ones. *See, e.g., Zelman v. Simmons-Harris*, 536 U.S. 639 (2002) (holding that school voucher program may offer vouchers for use in religious schools as well as secular schools without violating establishment clause); *but see, e.g., Committee for Public Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756 (1973) (invalidating, under establishment clause, public aid programs for private schools despite fact that nonreligious as well as religious schools were eligible to participate). Andreola cites no Seventh Circuit case in which the government has been required to make extraordinary expenditures (that is, expenditures significantly beyond those made on behalf of nonreligious persons) to facilitate an individual's exercise of his religion. *Cf. Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) (holding that Title VII's prohibition on religious discrimination requires employers to shoulder only *de minimis* burdens to accommodate religious practices, and noting that establishment clause problem might arise if statute were construed to require more burdensome accommodations). Mandating such expenditures may run afoul of the Establishment Clause.

6

Andreola's position appears even more untenable when one realizes that he is seeking government assistance that even law-abiding citizens do not have. As Sergeant Kildow explained to him when he arrived at the Rock County Jail, it was difficult even for her to keep kosher living in Rock County. Andreola himself admitted at oral argument that he had limited access to kosher food for the approximately seven months he was living in Rock County prior to his arrest. He noted that the closest Orthodox butchers were in Milwaukee and Chicago and he had no car for transportation. A store in Rockford, Illinois sold kosher chickens that he would purchase when he could. The only synagogue in the area was presided over part-time by a Reform Rabbi, and Andreola was not a member. Obviously, Rock County does not have a large Orthodox Jewish population and, as a result, there is little demand for food that is strictly kosher. This poses a problem for Jewish residents of Rock County who wish strictly to follow the dietary laws of their religion. But Rock County had no obligation to alleviate this problem. While the Supreme Court has held, in the First Amendment context, that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987), incarceration for a crime does not create a right to a government subsidy of religious practices with which even law-abiding members of the community have difficulty complying.

I conclude from the undisputed facts before me that the defendants did not violate Andreola's rights under RLUIPA. To the extent the County's failure to meet Andreola's demands imposed a burden on his effort to exercise his religion, I find that the County was justified by its compelling interests in maintaining security and order, preserving County funds and avoiding the subsidizing of religious practice. I also find that there was no less restrictive means of furthering

7

these interests. Accordingly, defendants' motion is granted on Andreola's RLUIPA claim, as well as his claim under the First Amendment, and this action is dismissed. In addition, Andreola's recent motion for joinder of parties (Docket #107) is denied as moot**.**

**SO ORDERED** this  18th  day of January, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
